## LOUIS WERNER STAVE CO. v. MARDEN, ORTH & HASTINGS CO.

(Circuit Court of Appeals, Second Circuit. February 27, 1922.)

No. 139.

1. **Courts** ⧉332—**Depositions** ⧉80—**Depositions are "opened in court," when opened by clerk pursuant to rule of court; court rule held valid.**

The provision of rule 6 of the District Court for the Southern District of New York, relating to depositions de bene esse, and in force since 1913, that "upon the return of a commission the clerk shall open and file it forthwith in his office and give notice thereof by mail to the counsel for the respective parties, and any motion to suppress such commission must be made within 10 days after the mailing of said notice," is valid and not inconsistent with Rev. St. § 865 (Comp. St. § 1474), requiring such depositions to remain under seal until "opened in court."

2. **Statutes** ⧉218—**Practical construction entitled to weight.**

The practical construction by a court in adopting rules of an ambiguous provision of an old statute *held* entitled to weight when the validity of the rule is challenged in an appellate court.

3. **Words and phrases—"In open court" defined.**

The expression "in open court" refers generically to the occasion when the judge is hearing a cause or some part thereof in public, in the sense of the right of the public to attend.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Open Court.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Louis Werner Stave Company against the Marden, Orth & Hastings Company. Decree for libelant, and respondent appeals. Affirmed.

Appeal from a decree entered March 15, 1921, awarding libelant damages in the principal sum of $3,284.41. There was a shipment of oak staves which libelant delivered to a steamship at Galveston, Tex., for transportation to Bordeaux, France. At Bordeaux there was short delivery. It is conceded that libelant's claim as to the quantity delivered to the ship at Galveston was sustained by the depositions of witnesses at Galveston taken de bene esse prior to the trial, if those depositions were properly received in evidence. It is further conceded that, except for those depositions, there was no evidence showing the quantity delivered at Galveston. The reception in evidence of the depositions was therefore vital to libelant's case. The sole ground upon which the decree below is attacked is that these depositions were not opened "in court," as appellant claims these words are to be construed under R. S. § 865 (Comp. St. § 1474).

The depositions were duly mailed from Galveston, Tex., by the commissioner, under seal, addressed as follows: "To the Clerk of the U. S. District Court for the Southern District of New York, New York City, N. Y." In the upper left-hand corner, the following appears: "Ethel F. Hilton, Notary Public, Galveston County, Texas." (Officer before whom the deposition was taken.) A similar legend appears in the upper right-hand corner. On the reverse side of the envelope the title of the action is given, together with the following statement: "Depositions of B. A. Kobler, J. Utz, J. A. Boillin, R. M. Bain, S. Blagge, M. B. Sweeney, and Henry Carstens, Witnesses for Libelant."

Prior to the trial, without the consent of the appellant, and without notice to appellant or its proctors, the envelope containing the depositions was opened, not in open court nor by a judge, but as provided by general rule 6 of the District Court for the Southern District of New York.

Rhinelander, Durkin & Perkins, of New York City (Edward N. Perkins and Charles A. Schneider, both of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (Vine H. Smith, of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1] The sole question in this case is whether the following part of the General Rules of Practice duly adopted by the District Court for the Southern District of New York is valid and not inconsistent with R. S. § 865 (Comp. St. § 1474), viz.:

"Upon the return of a commission the clerk shall open and file it forthwith in his office and give notice thereof by mail to the counsel for the respective parties, and any motion to suppress such commission must be made within 10 days after the mailing of said notice."

This rule became effective on February 1, 1913, in place of former rule 6, which read as follows:

"Upon the return of a commission the same shall be opened as of course by any judge of this court at the instance of any party, and on summary notice to all other parties, and all objections to the form or manner in which such commission was executed, taken or returned shall be deemed waived unless such objection or objections be specified in writing and filed within five days after said commission is opened."

For a period of over eight years prior to the entry of the decree herein, some hundreds of depositions have been opened under rule 6 and received in evidence in causes before the District Court for the Southern District of New York, and, so far as is known to us, no objection to rule 6 has been heretofore made. Many other depositions

have been opened, which, in due course, will be offered in evidence in causes yet to be heard, and doubtless the determination of many of these causes will depend upon whether or not these depositions are received in evidence. The importance of the rule and the great injury to many litigants, which would be likely to result if the rule is not valid, make it necessary for us to consider its validity, and not to dispose of this appeal upon the ground that appellant failed to move to suppress the depositions.

Section 30 of the Judiciary Act of 1789 (1 Stat. 88, 89) is quoted in part in the margin.[1] It will be noted that near the beginning of this section occur the words "in open court" and later (in the last sentence quoted) the words "into the court" and "such court" and "in court." The word "court" may have any one of several meanings. 15 C. J. 715 et seq.; Words and Phrases, vol. 2, 1675 et seq.; Words and Phrases, Second Series, vol. 1, 1111 et seq. The meaning to be assigned to this word when used in a statute is ascertained by the application of the usual rules of statutory construction, one of the most important of which is, of course, the object of the statute.

[3] The expression "in open court" refers generically to the occasion when the judge is hearing a cause or some part thereof in public, in the sense of the right of the public to attend. In U. S. v. Ginsberg, 243 U. S. 472, 37 Sup. Ct. 422, 61 L. Ed. 853, the court, in construing a section of the Naturalization Act, held that the term "open court" in that statute was used in contradistinction to a judge sitting in chambers.

In rule 46 of the present Equity Rules of the Supreme Court of the United States (198 Fed. xxxi, 115 C. C. A. xxxi), the term "in open court" is used to contrast the present method of trying equity causes with the preceding method discussed in Blease v. Garlington, 92 U. S. 1, 23 L. Ed. 521. Without further reference, it is plain that "in open court" does not necessarily mean "into the court" or "in court," and the last two expressions are to be differentiated from the first. It must be remembered that in 1789 the post office facilities were limited—according to Encyc. Britannica there were but 75 post offices in what then constituted the United States, and hence personal delivery of documents was not unusual. "Open court" was, of course, not in continuous session, nor was the business of the courts such as to require daily the

---

[1] "Sec. 30. That the mode of proof by oral testimony and examination of witnesses in open court shall be the same in all the courts of the United States, as well in the trial of causes in equity and of admiralty and maritime jurisdiction, as of actions at common law. And when the testimony of any person shall be necessary in any civil cause depending in any district in any court of the United States, who shall live at a greater distance from the place of trial than one hundred miles, or is bound on a voyage to sea, or is about to go out of the United States, or out of such district, and to a greater distance from the place of trial than as aforesaid, before the time of trial, or is ancient or very infirm, the deposition of such person may be taken de bene esse. * * * And the depositions so taken shall be retained by such magistrate until he deliver the same with his own hand into the court for which they are taken, or shall together with a certificate of the reasons as aforesaid of their being taken, and of the notice, if any, given to the adverse party, be by him the said magistrate sealed up and directed to such court, and remain under his seal until opened in court. * * * *"

presence of the judge, and indeed, as the records show, there was very little business in the earlier days of the national courts.

It is not to be supposed that, where personal delivery was made by the magistrate, he would be compelled to wait until there was a trial in open court, and that then, and only then, would the delivery be in accordance with the statute. When referring to the delivery by the magistrate of the deposition "with his own hand," it will be noted that the statute did not provide that the deposition should be sealed. There was nothing secret about the deposition. On the contrary, the statute required that the magistrate before whom the deposition was to be taken should notify the adverse party to be present, and in the case of seizures in admiralty, in which the adverse party is not named, it was required that notification should be given to the person having the agency or possession of the property libeled, if known to the libelant.

As, thus, the parties to the litigation would know, or, in any event, would have the right to know, the contents of the deposition, there was not the slightest reason why the deposition should not be placed upon the files of the court and become accessible to the litigants, and for that matter to the public. The magistrate was, of course, presumed to do his duty, and not to change or tamper with the deposition, and therefore the sole purpose of the statute was to make certain that, if the magistrate made personal delivery, he would physically and safely hand the deposition "into the court." He was not required by the words of the statute to hand it to the judge or the clerk. The broader words "into the court" were used, obviously meaning delivery to the official person who was a part of the court in the place where the court was physically situated. The expression "into the court" could be elaborately traced in statutes and rules, but, as matter of practical construction, it is sufficient to refer to present Supreme Court equity rule 49, which provides that—

"All evidence offered before an examiner * * * shall be * * * returned *into the court*." (Italics ours.)

For years depositions under rule 49, supra, have been filed in the office of the clerk of the District Court for the Southern District of New York, and probably the same course has been followed in every District Court in the United States. Thus the words "into the court" have been practically construed as meaning the delivery to and filing with the clerk, and the provision of the act of 1789 as to delivery "into the court" was certainly satisfied whenever a magistrate before whom a deposition had been taken delivered such deposition to the clerk at his office.

If the magistrate did not personally deliver the deposition, he had the alternative of sending it under seal, by messenger or post, directed to "such court." No one would seriously contend that if, instead of addressing the envelope to "such court"—i. e., the District Court—he addressed it to the clerk of the District Court, such address or inscription would be in violation of the provisions of the statute. To hold to the contrary would be to impose an embarrassing and unjustifiable technicality, which, in many instances, would impair the rights of parties and defeat the practical administration of justice.

When, therefore, the deposition came into the hands of the clerk in his official capacity, the next step was to safeguard against changes or tampering. There was no reason why the deposition should remain secret, and not be thrown open on the files of the court. The deposition was no more secret if forwarded under seal than if delivered by the magistrate with his own hand. Therefore it is plain that the sole purpose which the statute sought to accomplish when it provided that the deposition was to remain under seal "until opened in court" was to safeguard the physical integrity of the deposition.

There would be no occasion for the foregoing analysis, but for the construction which appellant urges in respect of Beale v. Thompson, 8 Cranch, 70, 3 L. Ed. 491. That is the only case of authority which has been cited to us, or which we have been able to find. There are cases in the Circuit and District Courts referred to infra, but no other case in the Supreme Court, nor any case in the Circuit Court of Appeals. The statement of facts in Beale v. Thompson, supra, is meager. Whether or not the clerk opened the deposition away from the court-house or the clerk's office does not appear; for it is merely stated that—

"The deposition was sealed up by the judge, but directed to the clerk of the court, and he, supposing it to be a letter respecting his official business, opened it out of court."

Mr. Justice Story said:

"Independent of all other grounds, the court are of opinion that the fact of the depositions, not having been opened in court is a fatal objection."

Viewed from the most extreme standpoint, the most that this case decides is that, because the statute did not specifically empower the clerk to open a sealed deposition, such unauthorized opening by the clerk, in the absence of appropriate authority, must be deemed to have taken place out of court; i. e., because the clerk, as matter of law, thus acted in a private capacity, with no greater authority in this respect than was conferred upon any other person. Whether the court had power to authorize the clerk to open a sealed deposition was not before the court, and hence not considered.

In U. S. v. Tilden, 28 Fed. Cas. 169, No. 16,520, Judge Choate had occasion to construe section 865 of the Revised Statutes (Comp. St. § 1474), quoted in the margin [2] which with sections 861 and 863 (Comp. St. §§ 1468, 1472) is derived from the act of 1789. He held that the word "then," which appears in that statute as it did in the act of 1789, was not to be construed as requiring that the deposition be opened in

[2] "Sec. 865. Every deposition taken under the two preceding sections shall be retained by the magistrate taking it, until he delivers it with his own hand into the court for which it is taken; or it shall, together with a certificate of the reasons as aforesaid of taking it and of the notice, if any, given to the adverse party, be by him sealed up and directed to such court, and remain under his seal until opened in court. But unless it appears to the satisfaction of the court that the witness is then dead, or gone out of the United States, or to a greater distance than one hundred miles from the place where the court is sitting, or that, by reason of age, sickness, bodily infirmity, or imprisonment, he is unable to travel and appear at court, such deposition shall not be used in the cause."

court upon the trial, and he pointed out clearly that there was no policy of keeping the deposition secret until the trial. He said:

"On the contrary, the rules of court as well as the decisions assume that, in respect to all depositions taken before the trial, the policy of the law is to have them opened and made accessible to the parties to the suit, in order that all formal questions in respect to the manner of taking may be disposed of before the trial."

He then referred to rules 113 and 114 of the District Court for the Southern District of New York adopted in 1838. These rules are quoted in the margin.[3] It will be noted that they required the filing of depositions in the clerk's office, and they gave permission to either party, after such filing, to enter an order of course to open the deposition and deliver copies thereof. If "opened in court" means what appellant contends, then there was no power in the old District Court to make these rules, because the court in such circumstances could not do away with the requirement of keeping the deposition sealed until opened "in open court." It is true that, at the conclusion of his opinion, Judge Choate stated that he thought the statute would be entirely satisfied by the depositions being opened in the presence of the parties or their attorneys in open court; but this sentence, when construed with the context, clearly means when opened pursuant to an order of court, and evidently was by way of extra caution. Thus, in the District Court for the Southern District of New York, there has been a practical construction of the statute since 1838, or, in other words, for over 80 years.

Rule 6 is no different in principle than these old rules 113 and 114. Rule 6 is a standing order of court. If under old rule 114 either party, without notice to the other, could enter an order, as of course, to open a deposition, certainly the court of its own motion could make such an order in each and every case, and, similarly, to avoid the burden of detail, could make a standing order. The sole purpose of the act of 1789 and of R. S. § 865, of safeguarding the physical integrity of the deposition, is met when the court enters its formal order authorizing its clerk to open the deposition. There are cases which hold that the clerk is a part of the court, and a court was defined by Bacon to be "an incorporated political being, which requires for its existence the presence of its judges, or a competent number of them, and a clerk or prothonotary, at or during which and at a place where it is by law authorized to be held, and the performance of some public act indicative of a design to perform the functions of a court," and by Lord

³ "Rule 113. Depositions taken under commissions, or otherwise, shall be forwarded to the clerk immediately after they are taken, and be filed on their return to the clerk's office, in term or vacation, and notice thereof shall be forthwith given by the party filing them to the proctor of the opposite party. And all objections to the form or manner in which they were taken or returned shall be deemed waived, unless such objection shall be specified in writing in four days after the same are opened, unless further time shall be granted by the judge.

"Rule 114. In suits between individuals, either party may at any time after the commissions or depositions are deposited with the clerk, enter an order of course, as of a special sessions, if in vacation, to open the same and deliver copies thereof."

Coke as "a place where justice is judicially administered." Lewis v. City of Hoboken, 42 N. J. Law (13 Vroom) 377, 379; Oaks v. Rodgers, 48 Cal. 197, at page 201.

In Shankwiker v. Reading, 21 Fed. Cas. 1163, No. 12,704, the court in construing the statute said:

"The law did not intend that either party should have possession of the deposition *until it would be received by the clerk and opened by the general or special order of the court.*" (Italics ours.)

In The Roscius, 20 Fed. Cas. 1175, No. 12,042, the deposition was apparently opened by the clerk of the court under the impression that there had been a consent. So far as the report of the case shows there was, in that case, no rule of court, and the District Judge followed what he regarded as the authority of Beale v. Thompson, supra.

In the case of In re Thomas (D. C.) 35 Fed. 337, the deposition was opened by the clerk, not in his capacity as clerk, but as special master, and presumably, without rule or order of court. The court, however, said:

"The court is always open for purposes like this. Application can be made, heard, and acted upon at any time by the court."

This dictum, therefore, supports the proposition that at any time the court may order the opening of a deposition.

In Stewart v. Townsend (C. C.) 41 Fed. 121, the deposition was opened by one of the judges of the court; but, as the parties had waived this with other points, Judge Simonton, who decided In re Thomas, supra, did not pass upon the question.

In Eiffert v. Craps (C. C.) 44 Fed. 164, the same judge passed upon a question as to a commission under old Supreme Court equity rule 67 (Hopkins, New Federal Rules [Ann. 2d Ed.] 119–121), and called attention to a local rule which allowed the commission to be opened by leave of the clerk upon the consent of the parties in writing. In that connection, see, also, old rule 69 of the Supreme Court (Hopkins, supra, p. 122), which provided for the return of commissions and depositions into the clerk's office, and permitted publication thereof in the clerk's office by order of any judge upon notice to the parties.

It is concluded, therefore, that the words "opened in court," as used in R. S. § 865, and as previously used in the act of 1789, comprehend and allow the opening of the deposition in pursuance of a formal order of court, whether such order is an order in an individual case or a standing order, in the form of a rule of practice duly adopted, and that the court has power to permit the physical act of opening to be performed officially by its clerk. R. S. § 918 (Comp. St. § 1544), authorized the District Courts, in any manner not inconsistent with any law of the United States, to "regulate their own practice as may be necessary or convenient for the advancement of justice and the prevention of delays in proceedings."

The District Court for the Southern District of New York has long been confronted with the largest volume of litigation of any District Court in the United States. On its calendars, among others, are many hundreds of admiralty causes. In such causes, perhaps, more peculiarly

than in any other, depositions are necessary, because of the departure to domestic and foreign ports of the officers and crews of vessels from all over the world. If depositions de bene esse are not taken, the litigant may lose forever the benefit of the testimony of important witnesses. In order to prevent delays and to advance justice in pursuance of the provisions of R. S. § 918, the court must deal in practical fashion with its administrative requirements and problems. The clerk of the court is a public officer and presumed to do his duty. For over eight years prior to the entry of the decree in this suit, and now for over nine years, this very necessary, sensible, and practical rule has been in operation. It has served to assist litigants and counsel, and no objection nor complaint has ever been made in respect thereof, except in the case at bar.

[2] In adopting rule 6, the District Court construed the phrase "opened in court," derived from an old statute, and the phrase is not free from ambiguity. In such circumstances, the doctrine of practical construction is of great value, and, although we entertain no doubt as to our construction of the statute, we may readily resort to its practical construction to confirm our conclusion. B. & O. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; U. S. v. Alabama G. S. R. Co., 142 U. S. 615, 621, 12 Sup. Ct. 306, 35 L. Ed. 1134.

Decree affirmed, with costs.